**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ASIF J. POONJA, individually and on behalf of similarly situated individuals, | |
| *Plaintiff*, | Case No. 20-CV-04388 |
| v. | Hon. Robert M. Dow, Jr. |
| KELLY SERVICES, INC., a Delaware corporation, | Hon. Magistrate Mara Valdez |
| *Defendant.* | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**I.      INTRODUCTION**

This putative class action arose out of Defendant's, Kelly Services, Inc. (hereinafter "Defendant"), practice of making unsolicited text message advertisements to cellular telephones of consumers across the nation in violation of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii). Knowing that its first Motion to Dismiss (Dkt. 13) likely stands little chance of success given Plaintiff's well-pled allegations, Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. 23) ("Motion to Dismiss") attempts to stretch the law even further by latching on to out-of-circuit authority to argue that the ruling in *Barr v. American Ass'n of Political Consultants,* 140 S. Ct. 2335 (2020) ("*AAPC*") that invalidated a limited exception to liability for government debt collection calls has invalidated the whole of the TCPA in its entirety. However, Defendant's argument is based on a purposefully convoluted analysis of each section of the *AAPC* opinion that is "at odds with the views of a majority of the

Case: 1:20-cv-04388 Document #: 29 Filed: 01/06/21 Page 2 of 15 PageID #:158

Supreme Court's Justices" and disregards well-established precedent regarding severability to play "a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole otherwise constitutional statute." *Shen v. Tricolor California Auto Grp., LLC*, No. 20-cv-7419, 2020 WL 7705888, at *4 (C.D. Cal. Dec. 17, 2020) (citing *AAPC*, 140 S. Ct. at 2351, 2355)).

The clear and purposeful outcome of the holding in *AAPC*, as most clearly stated by Justice Kavanaugh writing for the Court in a section joined, either directly or via concurrence, by six other justices, is that "*our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.*" *AAPC*, 140 S. Ct. at 2355 n. 12. (emphasis added).[1] Further, not only is the holding in *AAPC* based on Supreme Court precedent regarding limited severability of statutes, but such precedent itself also necessitates the same conclusion. *See, e.g.*, *Dorchy v. State of Kansas,* 264 U.S. 286, 289–90 (1924) ("A statute bad in part is not necessarily void in its entirety."); *Loeb v. Trustees of Columbia Township*, 179 U.S. 472, 490 (1900) ("[O]ne section of a statute may be repugnant to the Constitution without rendering the whole act void"). Indeed, both *AAPC* and *Selia Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020) cite positively to this very authority. *AAPC*, 140 S. Ct. at 2350 (citing *Dorchy* and *Loeb*); *Selia Law*, 140 S. Ct. at 2208 (same).

Defendant now asks this Court to reach the *opposite* conclusion of *AAPC*, finding that the entire TCPA was invalid for the last five years (from 2015 to 2020) and that no one who allegedly

---

[1] This statement appears in a section of the *AAPC* opinion formally joined by three justices (Kavanaugh, Alito, and Roberts) and endorsed by four more in their respective concurrences. *See AAPC*, 140 S. Ct., at 2357 (Sotomayor Concurrence) ("I agree that the offending provision is severable"); *Id.* at 2363 (Breyer Concurrence, joined by Justices Ginsburg and Kagan) ("I agree with Justice Kavanaugh's conclusion that the provision is severable").

violated the TCPA during that period, such as Defendant, can be held liable for those violations. There is no basis for this reading in either *AAPC* itself, or the decades of Supreme Court precedent *AAPC* is based on. As the court in *Shen* recently found and further reiterated, the Supreme Court's decision "invalidate[d] and sever[ed] [an] unconstitutional provision[] from the remainder of the law" and neither the Supreme Court, nor this Court, should be in the habit of "razing whole statutes or Acts of Congress" as Defendant would have it. *Shen*, 2020 WL 7705888, at *4 (citing *AAPC*, 140 S. Ct. at 2351). For the following reasons, and those stated further below, Defendant's Motion to Dismiss should be denied in its entirety.

## II.     BACKGROUND

Defendant Kelly Services advertises various job listings for thousands of businesses nationwide in an effort to fill their open positions. (Complaint, Dkt. 1-1, at ¶¶ 1, 7, 12, 14.) As part of Defendant's advertising efforts, Defendant implemented an automated text message marketing campaign that sent job advertisements directly to the cell phones of individuals it hoped would be potential applicants. (*Id.* at ¶¶ 12, 14.) However, Defendant failed to verify that it had written consent to send its text message advertisements. (*Id.* at ¶¶ 13, 19.)

Specifically, in November 2019, Plaintiff unexpectedly received the below automated text message from Defendant;



(*Id.* at ¶ 14.) The text message that Plaintiff received came from a dedicated 1-800 toll-free number

operated by Defendant to send such messages *en masse* to thousands of other individuals. (Complaint at ¶¶ 14, 16, 21.) Defendant sent the above text message utilizing an ATDS as evidenced by the generic nature of the text message, Defendant's use of a dedicated toll-free number, and the automated "STOP" and "text back" functionality incorporated within the text message. (*Id.* at ¶¶ 17, 28.) As such, Defendant's text message was sent in violation of the TCPA. (*Id.* at ¶ 30.)

### III. LEGAL STANDARD

"When ruling on a motion to dismiss for lack of subject matter jurisdiction, a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Twin City Fire Ins. Co. v. Law Office of John S. Xydakis, P.C.*, 407 F. Supp. 3d 771, 775 (N.D. Ill. 2019) (citations omitted). It "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists," including by taking judicial notice of public records. *Id.*

### IV. ARGUMENT

#### A. *AAPC* Did Not Hold That The Narrow Government Debt Collector Exception Rendered All Of The TCPA Unconstitutional.

Defendant's argument advanced in its Motion to Dismiss is undermined by the *AAPC* opinion itself. Defendant suggests that *AAPC* retroactively rendered the entirety of the TCPA unconstitutional. (Motion to Dismiss at 10.) However, in *AAPC*, the Supreme Court applied traditional severability principles to sever the government-debt exception while leaving the remainder of the TCPA intact. The *AAPC* Court gave two reasons for its decision to sever the government debt exception rather than invalidate the entirety of the TCPA's robocall restriction. First, the Communications Act of 1934 which encompasses the TCPA, contains an express

severability clause: "If any provision of this chapter or the application thereof to any person or circumstance is held invalid, the remainder of this chapter and the application of such provision to other persons or circumstances shall not be affected thereby." 47 U.S.C. § 608 (emphasis added). The Supreme Court held that "[t]he text of the severability clause squarely covers the unconstitutional government-debt exception and requires that we sever it." *AAPC*, 140 S. Ct. at 2352.

Second, even absent the express severability provision, the TCPA would survive because federal courts apply a long-standing presumption of severability in order to save an otherwise constitutional statute from being invalidated by a single provision. *Id.* at 2350. Defendant's misguided interpretation of *AAPC* suggests that the Supreme Court rendered the entire TCPA statute unconstitutional (Motion to Dismiss at 8), however, the correct and obvious reading illustrates the opposite. As far back as "*Marbury v. Madison* to the present . . . the Court's remedial preference after finding a provision of federal law unconstitutional has been to salvage rather than destroy the rest of the law passed by Congress and signed by the President." *Id.* In other words, "[t]he Court's precedents reflect a decisive preference for *surgical severance rather than wholesale destruction*, even in the absence of a severability clause." *Id.* at 2350–51. Accordingly, "if any part of an Act is 'unconstitutional, the provisions of that part may be disregarded while full effect will be given to such as are not repugnant to the constitution of the United States.'" *Id*. at 2350. As the Court explained, this approach honors the role of judiciary and the separation of powers. The presumption of severability "manifests the Judiciary's respect for Congress's legislative role by keeping courts from unnecessarily disturbing a law apart from invalidating the provision that is unconstitutional." *Id.* at 2351.

On these two grounds, the Court in *AAPC* decided to sever and invalidate the government-

debt exception without disturbing the rest of the TCPA. "With the government-debt exception severed, *the remainder of the law is capable of functioning independently and thus would be fully operative as a law*." *AAPC*, 140 S. Ct. 2352 at 2353. And to the extent there was any doubt about whether the Court's holding as to the government-debt exception could eliminate liability under the TCPA's general restrictions on robocalls, Justice Kavanaugh's plurality opinion made sure to clarify: "Our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* at 2355 n. 12. While Defendant dismisses the footnote as "dicta," the fact of the matter is that "Justice Kavanaugh's resolution of the issue" in his plurality opinion[2] "is persuasive[.]" This is especially so since the Ninth Circuit in an earlier analysis of the very same issue "invalidated the government debt exception as violative of the First Amendment . . . but severed the exception from the remainder of § 227(b)(1)(A)(iii) and remanded for further proceedings to resolve claims that included calls made after the 2015 enactment of the government debt exception." *Shen v. Tricolor California Auto Grp., LLC*, 2020 WL 7705888, at *4 (citing *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1157 (9th Cir. 2019)).

Finally, Defendant's argument completely ignores the fact that the government-debt exception is itself an amendment to the TCPA. "The rule that the invalidity of a part of a statute

---

[2] While Defendant makes much of which Justices joined in the various sections of the *AAPC* Opinion (*see* Motion to Dismiss at 6–7) in an attempt to diminish Justice Kavanaugh's plurality opinion, the fact of the matter is that Defendant's argument "comes closer to adopting the view of the opinion written by Justice Gorsuch and joined by Justice Thomas, than it does to adopting the view of Justice Kavanaugh's plurality opinion" which *both* Justices Sotomayor and Breyer also joined in their concurrences in the judgment on severability. *Shen*, 2020 WL 7705888, at *4; *see also id.* at *4 ("it appears that *a majority of Justices*, and the Ninth Circuit, ascribe to a more limited view of severance that 'invalidates and severs unconstitutional provisions from the remainder of the law rather than razing whole statutes or Acts of Congress'") (citing *AAPC*, 140 S. Ct. at 2351) (emphasis added).

does not extend to the whole statute unless the parts are interdependent is especially applicable to amendments and amendatory acts. Usually, when an amendatory exception to a statute proves unconstitutional, *the original statute stands wholly unaffected by it*." 16A Am. Jur. 2d Constitutional Law § 201 (emphasis added). In other words, when a statute has been enacted and then, at some later time, Congress adds an amendment that is ultimately deemed unconstitutional, the amendment is treated as if it never occurred and the original statute remains in full force as if never altered by the nullity. The Supreme Court in *AAPC* expressly followed this rule. *See AAPC*, 140 S. Ct. at 2353 ("The Court has long applied severability principles in cases like this one, where Congress added an unconstitutional amendment to prior law. In those cases, the Court has treated the original, pre-amendment statute as the 'valid expression of legislative intent.'") (citing *Frost v. Corporation Commission of Oklahoma,* 278 U.S. 515, 526–27 (1929)); *Id.* at 2353 ("[T]he Court in *Frost* explained that an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, *and for that reason has no effect on the original statute*") (emphasis added); *Id.* at 2355 ("The government-debt exception is a relatively narrow exception to the broad robocall restriction and severing the government-debt exception does not raise any other constitutional problems"). Thus, even leaving Justice Kavanaugh's footnote aside, *AAPC* clearly holds that the TCPA was not rendered unconstitutional because of the narrow government-debt collector exception.

The Court's severability analysis ends the inquiry here. A century of unambiguous Supreme Court precedent holds that the TCPA has, at all times, been the constitutional "valid expression of the legislative intent" to prohibit harassing and invasive robocalls, and the severed government-debt exemption is merely a "nullity" that was "void when enacted" rather than a "get-out-of-jail-free card" for Defendant. *AAPC*, 140 S. Ct. at 2356 ("We hold that the 2015 government-debt exception added an unconstitutional exception to the law. We cure that

constitutional violation by invalidating the 2015 government-debt exception and severing it from the remainder of the statute").

### B. Defendant's Arguments Are Contrary To Supreme Court Precedent.

The Supreme Court has held for over a century that:

> Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem. We prefer, for example, to enjoin only the unconstitutional applications of a statute while leaving the other applications in force, or to sever its problematic portions while leaving the remainder intact.

*Ayotte v. Planned Parenthood of Northern New England,* 546 U.S. 320, 328–329 (2006) (internal citations omitted); *see also Id.* at 329 ("[T]he 'normal rule' is that partial, rather than facial, invalidation is the required course, such that a statute may be declared invalid to the extent that it reaches too far, but otherwise left intact") (internal quotations omitted); *Frost*, 278 U.S. at 526–27 ("Here it is conceded that the statute, before the amendment, was entirely valid. When passed, it expressed the will of the Legislature which enacted it. Without an express repeal, a different Legislature undertook to create an exception, but, since that body sought to express its will by an amendment which, being unconstitutional, is a nullity and, therefore, powerless to work any change in the existing statute, that statute must stand as the only valid expression of the legislative intent."); *Dorchy v. State of Kansas*, 264 U.S. 286, 289–90 (1924) ("A statute bad in part is not necessarily void in its entirety"); *Loeb v. Trustees of Columbia Township*, 179 U.S. 472, 490 (1900) ("[O]ne section of a statute may be repugnant to the Constitution without rendering the whole act void.").

In comparison to the case at issue, *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012) dealt with a similar issue. In *Sebelius*, the Supreme Court held that a provision of the Affordable Care Act that permitted the Secretary of Health and Human Services to "withhold all further [Medicaid] payments . . . to the state if she determines that the State is out

of compliance with any Medicaid requirement" was unconstitutional. *Sebelius*, 567 U.S. at 585. The Supreme Court cured this unconstitutional provision by severing it from the statute, rather than striking down the entire Affordable Care Act.[3] Further, in so ruling, the Supreme Court did *not* hold that the Affordable Care Act was unconstitutional prior to severing this provision. In fact, the Supreme Court held the exact opposite stating that "[t]oday's holding does not affect the continued application of § 1396c to the existing Medicaid program" and that it does not "require striking down other portions of the Affordable Care Act." *Id.* at 586, 588.

Similarly, there is no reason to conclude – either from the language in *AAPC* nor based on Supreme Court precedent – that the severance of the narrow exception rendered the *entire* robocall restriction unconstitutional between 2015 and when *AAPC* was decided. When the Supreme Court severs a portion of law and leaves the rest in place, it only declares the severed portion unconstitutional. It does not hold that the remainder of the law was unconstitutional while the severed portion was in place. Given that the very basis of the decision in *AAPC* was to "apply traditional severability principles" (*AAPC*, 140 S. Ct. at 2355) to a limited portion of the TCPA and allow the remainder of the law to remain untouched, Defendant's arguments calling for broadening the scope of *AAPC* to totally invalidate the TCPA for a five-year period is directly at odds with both Supreme Court precedent and *AAPC* itself.

      **C.**    **Defendant's Argument Relies On Non-binding Authority That Is Contrary To The Majority Of The Courts That Have Considered The Issue.**

There is no question that Defendant's Motion to Dismiss was not a result of divine

---

[3] Like the TCPA, the Affordable Care Act has a severability clause. *Sebelius*, 567 U.S. at 586 ("The chapter of the United States Code that contains § 1396c includes a severability clause confirming that we need go no further"); *AAPC,* 140 S. Ct. at 2352 (noting the severability clause in the Communications Act of 1934, 47 U.S.C. § 608, "covers § 227 of Title 47, the provision with the robocall restriction and the government-debt exception").

inspiration—rather Defendant is trying to see if it can get lucky by convincing this Court to join the recent fringe holdings in *Creasy v. Charter Comms., Inc.*, No. 20-cv-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020) and *Lindenbaum v. Realgy, LLC,* No. 19-cv-2862, 2020 WL 631915 (N.D. Ohio Oct. 29, 2020). To begin with, the decisions Defendant relies on come from courts outside this Circuit that are neither persuasive nor binding on this court. *St. Paul Surplus Lines Ins. Co. v. Diversified Athletic Servs.*, 707 F. Supp. 1506, 1515 (N.D. Ill. 1989) ("a decision of a district court in another circuit, is not binding on this court"); *Hejsak v. Great-West Life & Annuity Ins. Co.*, 331 F. Supp. 2d 756, 767 (W.D. Wis. 2004) (declining to follow a decision that was "unpublished and from a district court outside the Seventh Circuit" because it "holds no precedential value in this court").

Further, for the same reasons explained in Sections IV.A and IV.B above, the *Creasy* and *Lindenbaum* decisions fail to properly apply Supreme Court precedent regarding severability or give proper weight to the analysis expressed by the Supreme Court in reaching its decision in *AAPC*. The Supreme Court expressly stated in *AAPC* that when Congress includes a severability clause in a law, as it did here with the TCPA, Congress' intent is clear in that "the unconstitutionality of one provision does not affect the rest of the law." 140 S. Ct. at 2350. When examining a statute "a severability or non-severability clause leaves no doubt about what the enacting Congress wanted if one provision of the law were later declared unconstitutional. A severability clause indicates 'that congress did not intend the validity of the statute in question depend on the validity of the constitutionally offensive provision.'" *Id.* at 2349 (*quoting Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 686 (1987)). "And a non-severability clause does the opposite." *Id*. It is little surprise then that *AAPC* was clear in holding that "the 2015 government-debt exception added an unconstitutional exception to the law . . . [and we] cure that constitutional

violation by invalidating the 2015 government-debt exception and severing it from the remainder of the statute . . . severing the government-debt exception does not raise any other constitutional problems." *AAPC*, 140 S. Ct. at 2355–56.

The underlying purpose of severance is to remove an invalid portion of a statute while keeping intact all remaining valid sections. While *AAPC's* plurality opinion states that the right remedy to the unconstitutionality of the government-debt-collection exception is severance, the courts in *Creasy* and *Lindenbaum* perplexingly conclude that severance of the debt-collection exception requires invalidation of the TCPA as unconstitutional in its entirety for the past five years. *Creasy*, 2020 WL 5761117, at *5; *Lindenbaum*, 2020 WL 6361915, at *6. These decisions are contrary to the Supreme Court's extensive discussion that the "Court's remedial preference . . . and precedents reflect a decisive preference for surgical severance." *AAPC*, 140 S. Ct. at 2350. As Justice Kavanaugh explained:

> The Court's presumption of severability supplies a workable solution–one that allows courts to avoid judicial policymaking or de facto judicial legislation in determining just how much of the reminder of a statute should be invalidated. The presumption also reflects the confined role of the Judiciary in our system of separated powers–stated otherwise, *the presumption manifests the Judiciary's respect for Congress's legislative role by keeping courts from unnecessarily disturbing a law apart from invalidating the provision that is unconstitutional*.
>
> Applying the presumption, the Court invalidates and severs unconstitutional provisions from the remainder of the law rather than razing whole statutes or Acts of Congress. Put in common parlance, *the tail (one unconstitutional provision) does not wag the dog (the rest of the codified statute or the Act passed by Congress)*.

*Id.* (emphasis added). As the court in *Shen* succinctly stated, the decisions in *Creasy* and *Lindenbaum* "have *broadened* the scope of *AAPC's limited* holding" and "appear[] to be at odds with the views of a majority of the Supreme Court's Justices[.]" 2020 WL 7705888, at *4 (emphasis added).

It is little surprise that the majority of courts who have considered the issue have applied *AAPC* as the limited holding that it is and allowed parties to proceed with claims brought under portions of § 227(b) unaltered by *AAPC*. On December 11th, 2020 the Middle District of Florida issued an opinion rejecting the very same arguments brought here by Defendant as unpersuasive *despite* the defendant's reliance on *Creasy* and *Lindenbaum*. *Abramson v. Federal Insurance Company*, No. 19-cv-2523, 2020 WL 7318953, at *2 (M.D. Florida Dec. 11, 2020) ("The Court finds this argument unpersuasive. Although XenCall cites two cases supporting its arguments, the vast majority of cases this Court has reviewed conclude that parties may continue to bring claims under the portions of § 227(b) unaltered by *AAPC*"); *see, also, Komaiko v. Baker Techs., Inc.,* No. 19-cv-03795, 2020 WL 5104041, at *2 (N.D. Cal. Aug. 11, 2020) ("If the Court had struck down the call restriction, Plaintiff's claims in this case would have been mooted. Instead, however, the Court severed the government-debt exception from the remainder of the statute, leaving the call restriction otherwise intact. *Because the government-debt exception is not at issue in this case, the decision in Political Consultants does not impact Plaintiff's claims*") (emphasis added); *Burton v. Fundamerica, Inc.,* No. 19-cv-119, 2020 WL 4504303, at *1 n.2 (D. Neb. Aug. 5, 2020) ("The Supreme Court held last month in [*AAPC*] that one of the exceptions to this general prohibition, for calls made solely to collect a government debt, violated the First Amendment, but that it was severable from the TCPA as a whole–so, the provision on which the plaintiff's claims relies survived"); *Buchanan v. Sullivan*, No. 20-cv-301, 2020 WL 6381563, at *3 (D. Neb. Oct. 30, 2020) (affirming the court's federal question jurisdiction over claims made under the TCPA); *Schmidt v. AmerAssist A/R Sols. Inc.,* No. 20-cv-0020, 2020 WL 6135181, at *4 n.2 (D. Ariz. Oct. 19, 2020) ("The exception for calls made to collect government-owned or -guaranteed debt was recently invalidated and severed by the Supreme Court. Schmidt has not alleged that her purported debt

was owned or guaranteed by the government, so [*AAPC*] does not affect this case") (internal citations omitted); *Lacy v. Comcast Cable Communications, LLC,* No. 19-cv-05007, 2020 WL 4698646, at *1 (W.D. Wash. Aug. 13, 2020); *Shen*, 2020 WL 7705888, at *4 ("Constitutional litigation is not a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole otherwise constitutional state") (internal citations omitted). As correctly held by the majority of the courts that have considered the issue, because Plaintiff's claims are alleged under the portion of the TCPA that was *expressly* left untouched by the analysis in *AAPC*, Defendant's argument that this court lacks jurisdiction holds no merit.

## V. CONCLUSION

Defendant's arguments in its Motion to Dismiss ultimately obfuscate a simple reality: Plaintiff alleges that Defendant violated the robocall prohibition in the TCPA that was expressly enacted by Congress in 1991 and upheld as constitutional by the Supreme Court in *AAPC*. The Supreme Court's curing of a separate infirmity not at issue here does not implicitly render the rest of the statute unenforceable in its entirety for the past five years and give Defendant, and others like it, a get-out-of-jail free card by removing this court's jurisdiction to hear the case. For all the foregoing reasons, Defendant's Motion to Dismiss should be denied in its entirety.

Dated: January 6, 2021          Respectfully Submitted,

         ASIF J. POONJA, individually and on behalf of a class of similarly situated individuals,

         By: /s/ Eugene Y. Turin
             One of His Attorneys

Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2021, I electronically filed the foregoing *Plaintiff's Memorandum Of Law In Opposition To Defendant's Motion To Dismiss For Lack Of Subject Matter Jurisdiction* with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ Eugene Y. Turin