**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ASIF J. POONJA, individually and on behalf of similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 20-CV-04388 |
| v. | ) ) | Hon. Robert M. Dow, Jr. |
| KELLY SERVICES, INC., a Delaware corporation, | ) ) ) | Hon. Magistrate Mara Valdez |
| Defendant. | ) ) | |

**INTERVENOR UNITED STATES' BRIEF IN SUPPORT OF THE**
**CONSTITUTIONALITY OF THE TELEPHONE CONSUMER PROTECTION ACT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 3

I.      Statutory Background ........................................................................................... 3

II.     Judicial Decisions After *AAPC* ....................................................................... 4

III.    Procedural Background........................................................................................ 6

ARGUMENT ................................................................................................................... 7

I.      The Court Should First Resolve Nonconstitutional Grounds for Decision ....................... 7

II.     Defendants May Be Held Liable For Texts Sent Before *AAPC* ........................................ 7

         a.      Because the Government-Debt Exception Was an Unconstitutional
Amendment to an Otherwise Valid Statute, It Had No Effect on the
Autodialer Restriction, Which Has Been Fully Operative at All Relevant
Times.................................................................................................. 8

         b.      Defendant's Arguments Are Unavailing ............................................... 11

CONCLUSION.................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Abramson v. Fed. Ins. Co.*,
  No. 8:19-cv-2523-T-60AAS, 2020 WL 7318953 (M.D. Fla. Dec. 11, 2020) ........................... 5

*Barr v. Am. Ass'n of Pol. Consultants* ("*AAPC*"),
  140 S. Ct. 2335 (2020) ...................................................................................... *passim*

*Boisvert v. Carnival Corp.*,
  No. 8:20-cv-2076-30SPF (M.D. Fla. Mar. 12, 2021) ................................................ 5

*Bonkuri v. Grand Caribbean Cruises, Inc.*,
  No. 0:20-CV-60638-WPD, 2021 WL 612212 (S.D. Fla. Jan. 19, 2021) ................................... 6

*Buchanan v. Sullivan*,
  No. 8:20-CV-301, 2020 WL 6381563 (D. Neb. Oct. 30, 2020) ................................................ 5

*Burton v. Fundmerica, Inc.*,
  No. 8:19-CV-119, 2020 WL 4504303 n.2 (D. Neb. Aug. 5, 2020) ........................................... 5

*Chicago, I. & L. Ry. Co. v. Hackett*,
  228 U.S. 559 (1913) ................................................................................................ 10, 11

*Creasy v. Charter Commc'ns, Inc.*,
  489 F. Supp. 3d 499 (E.D. La. 2020),
  *judgment entered*, 2020 WL 7646640 (E.D. La. Dec. 23, 2020) ................................... 5, 11, 12

*Cunningham v. Matrix Fin. Servs., LLC*,
  No. 4:19-CV-896, 2021 WL 1226618 (E.D. Tex. Mar. 31, 2021) ...................................... 5, 13

*Eberle v. Michigan*,
  232 U.S. 700 (1914) ................................................................................................ 8, 9

*Ex parte Siebold*,
  100 U.S. 371 (1879) ................................................................................................ 14

*FCC v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012) ................................................................................................ 13

*Frost v. Corp. Comm'n of Okla.*,
  278 U.S. 515 (1929) ...................................................................................... *passim*

*GEFT Outdoors, LLC v. City of Westfield*,
  922 F.3d 357 (7th Cir. 2019), *cert. denied sub nom. GEFT Outdoor LLC v. City of Westfield*,
  140 S. Ct. 268 (2019) ................................................................................................ 14

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) ................................................................................................ 15

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) .................................................................................................... 7

*Harper v. Va. Dep't of Tax'n*,
   509 U.S. 86 (1993) .................................................................................................. 10

*Hossfeld v. American Fin. Sec. Life Ins. Co.*,
   No. 19-cv-60597, 2021 WL 1186526 (S.D. Fla. Mar. 29, 2021) ............................. 6

*Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*,
   No. 5:20-cv-38-OC-30PRL, 2020 WL 7346536 (M.D. Fla. Dec. 11, 2020)............ 5

*In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
   18 FCC Rcd. 14014 (2003) ...................................................................................... 3

*James B. Beam Distilling Co. v. Georgia*,
   501 U.S. 529 (1991) ............................................................................................... 10

*Komaiko v. Baker Techs., Inc.*,
   No. 19-cv-03795-DMR, 2020 WL 5104041 (N.D. Cal. Aug. 11, 2020)................. 5

*Lacy v. Comcast Cable Commc'ns, LLC*,
   No. 3:19-cv-05007-RBL, 2020 WL 4698646 (W.D. Wash. Aug. 13, 2020) ........... 5

*Lindenbaum v. Realgy, LLC*,
   No. 1:19-cv-2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020)................. 5, 11, 12

*Marbury v. Madison*,
   5 U.S. 137 (1803) ................................................................................................... 14

*Massaro v. Beyond Meat, Inc.*,
   No. 3:20-cv-00510-AJB-MSB (S.D. Cal. Mar. 12, 2021) ...................................... 6

*McCurley v. Royal Sea Cruises, Inc.*,
   No. 17-cv-986-BAS-AGS, 2021 WL 288164 (S.D. Cal. Jan. 28, 2021)................. 6

*Mims v. Arrow Fin. Servs., LLC*,
   565 U.S. 368 (2012) ................................................................................................. 3

*Montgomery v. Louisiana*,
   577 U.S. 190 (2016) ............................................................................................... 14

*Moody v. Synchrony Bank*,
   No. 5:20-CV-61 (MTT), 2021 WL 1153036 (M.D. Ga. Mar. 26, 2021)............ 6, 14

*Rieker v. Nat'l Car Cure, LLC*,
   No. 3:20-CV-5901-TKW-HTC, 2021 WL 210841 (N.D. Fla. Jan. 5, 2021) ........................... 6

*Rivers v. Roadway Exp., Inc.*,
   511 U.S. 298 (1994) ................................................................................................ 10, 11

*Schmidt v. AmerAssist A/R Sols. Inc.*,
   No. CV-20-00230-PHX-DWL, 2020 WL 6135181 (D. Ariz. Oct. 19, 2020) .......................... 5

*Shen v. Tricolor Cal. Auto Grp., LLC*,
   No. 20-cv-7419 PA (AGRX), 2020 WL 7705888 (C.D. Cal. Dec. 17, 2020) .......................... 6

*Stoutt v. Travis Credit Union*,
   No. 2:20-cv-1280 WBS AC, 2021 WL 99636 (E.D. Cal. Jan. 12, 2021) ................................. 6

*Trujillo v. Free Energy Sav. Co.*,
   No. 5:19-cv-2072-MCS-SP, 2020 WL 8184336 (C.D. Cal. Dec. 21, 2020) ........................... 6

*United States v. Baucum*,
   80 F.3d 539 (D.C. Cir. 1996) .................................................................................... 14

*United States v. Jackson*,
   390 U.S. 570 (1968) .............................................................................................. 9, 10

*United States v. Miselis*,
   972 F.3d 518 (4th Cir. 2020) ................................................................................... 15

**Statutes**

47 U.S.C. § 227(b)(1)(A)(iii) ........................................................................................ 1, 3, 6

47 U.S.C. § 608 ............................................................................................................ 3

Model Penal Code § 2.04(3)(b)(i) ................................................................................. 13

Telephone Consumer Protection Act of 1991,
   Pub. L. No. 102-243, 105 Stat. 2394 (1991) ................................................................. 3

Bipartisan Budget Act of 2015,
   Pub. L. No. 114-74, 129 Stat. 584 (2015) .................................................................... 3

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 6

## **INTRODUCTION**

Since 1991, the Telephone Consumer Protection Act ("TCPA") has prohibited the use of certain automated technologies in making calls or text messages to cell phones absent the consent of the person being called or texted. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (the "autodialer restriction"). There is no dispute that the autodialer restriction was constitutional when enacted. In a 2015 amendment, Congress added an exception to the statute to allow the use of autodialers for calls (or texts) made to collect debts owed to or guaranteed by the United States without the consent of the person being called (the "government-debt exception"). Last year, in *Barr v. Am. Ass'n of Pol. Consultants* ("*AAPC*"), 140 S. Ct. 2335 (2020), the Supreme Court held that the government-debt exception rendered the statute content-based and accordingly severed the government-debt exception from the remainder of the statute. In the wake of *AAPC*, there is no dispute that a call or text made today in violation of the autodialer restriction would again subject a robocaller to liability. *See id.* at 2353 (plurality op.) ("With the government-debt exception severed, the remainder of the law is capable of functioning independently and thus would be fully operative as a law.").

Nonetheless, Defendant Kelly Services, Inc. argues in its Memorandum of Law in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Mem."), ECF No. 23, that it would be unconstitutional to apply the autodialer restriction to the text message at issue in this case because Defendant allegedly sent it to Plaintiff on November 21, 2019, after the government-debt exception was enacted but before the Court's decision in *AAPC*. *See id*. at 1, 13-15. According to Defendant, the autodialer restriction cannot be enforced against alleged violations of the TCPA that occurred during this time period (roughly 2015-2020) because the presence of the government debt exception at that time rendered the entire autodialer restriction unconstitutional,

*id.* at 11-15, even though there is no dispute that the autodialer restriction was fully constitutional before and after that time period.

This result was squarely rejected in the *AAPC* plurality opinion, in which three Justices confirmed that the opinion "does not negate the liability of parties who made robocalls" prior to the Court's decision, 140 S. Ct. at 2355 n.12, and neither of the opinions concurring in the judgment with respect to severability disputed that conclusion, *see id.* at 2357 (Sotomayor, J.); *id.* at 2363 (Breyer, J.). And although three district courts have ignored that clear direction and held that calls and texts made during the time period in which the government debt exception was in effect are immune from the TCPA, a substantial majority of district courts have rejected Defendant's argument and concluded that violations of the TCPA's autodialer restriction during that time period are enforceable.

This Court should reject Defendant's argument because it runs counter to the rule that "an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *AAPC*, 140 S. Ct. at 2353 (plurality op.) (quoting *Frost v. Corp. Comm'n of Okla.*, 278 U.S. 515, 526-27 (1929)). In circumstances like these, in which the pertinent statute was valid as originally enacted, an unconstitutional amendment is "powerless to work any change in the existing statute," and the original "statute must stand as the only valid expression of the legislative intent." *Frost*, 278 U.S. at 526-27. Based on that rule, the Supreme Court has repeatedly allowed a finding of liability under statutes that were valid when enacted but to which invalid amendments had been promulgated before the time of the alleged violation. The same result should hold here.

## BACKGROUND

### I. Statutory Background

"Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-72 (2012); *see* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5)-(6), 105 Stat. 2394, 2394 (1991). As pertinent here, the TCPA's autodialer restriction makes it unlawful:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service[.]

47 U.S.C. § 227(b)(1)(A)(iii). This provision has long been interpreted to apply to both phone calls and text messages. *See In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 (2003).

In 2015, Congress amended the TCPA to provide that the autodialer restriction does not apply to calls made solely to collect a debt owed to or guaranteed by the United States (the "government-debt exception"). *See* Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a)(1), 129 Stat. 584, 588 (2015). The Communications Act of 1934 contains a severability provision covering the TCPA, which states that "[i]f any provision of this chapter . . . is held invalid, the remainder . . . shall not be affected." 47 U.S.C. § 608.

In July 2020, the Supreme Court held in *AAPC* that the government-debt exception "added an unconstitutional discriminatory exception to the robocall restriction." 140 S. Ct. at 2352 (plurality op.); *id.* at 2364 (Gorsuch, J.) (concurring in judgment as to that conclusion). However, the Court rejected the argument that the presence of the government-debt exception meant that the overall restriction on autodialed calls should be invalidated. *See id.* at 2348-49 (plurality op.); *id.* at 2362 (Breyer, J.) (concurring in judgment in part and dissenting in part) (agreeing that "the

3

government-debt exception provides no basis for undermining the general cell phone robocall restriction"). The Court further held that the government-debt exception, i.e., "the constitutionally offending provision," *id*. at 2353, was severable, and thus "the correct result in this case is to sever the . . . exception and leave in place the longstanding robocall restriction." *Id.* at 2355 (plurality op.); *see also id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer J.) (concurring in judgment with respect to severability and dissenting in part). As the plurality explained, "an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *Id.* at 2353 (quoting *Frost*, 278 U.S. at 526-27).

The plurality opinion contained a footnote ("footnote 12") in which three Justices discussed the effect that severing the government-debt exception would have on parties' liability for prior violations of the autodialer restriction. The opinion explained that despite the Court's holding that the government-debt exception is unconstitutional, "no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court . . . or such date that the lower courts determine is appropriate." *Id.* at 2355 n.12. The plurality continued by flatly stating that "[o]n the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* Neither of the separate opinions concurring with respect to severability questioned that conclusion. *See id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J.).

## II.    Judicial Decisions After *AAPC*

Subsequent to the Supreme Court's decision in *AAPC*, several defendants moved to dismiss complaints that sought enforcement of the TCPA against calls and text messages made after the

government-debt exception was added but before *AAPC* was decided. Three district courts have agreed with this argument and dismissed TCPA complaints to the extent they sought damages for calls and texts made during this time period. *See Cunningham v. Matrix Fin. Servs., LLC*, No. 4:19-cv-896 (E.D. Tex. Mar. 31, 2021), ECF No. 149; *Lindenbaum v. Realgy, LLC*, No. 1:19-cv-2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020); *Creasy v. Charter Commc'ns, Inc.*, 489 F. Supp. 3d 499 (E.D. La. 2020), *judgment entered*, No. 20-cv-1199, 2020 WL 7646640 (E.D. La. Dec. 23, 2020).[1] However, the vast majority of district courts that have addressed the issue have rejected the argument that robocallers can avoid liability for autodialed calls and texts made before the Supreme Court confirmed that the government-debt exception was invalid but severable. *See Abramson v. Fed. Ins. Co.*, No. 8:19-cv-2523-T-60AAS, 2020 WL 7318953, at *2 (M.D. Fla. Dec. 11, 2020) (noting that "the vast majority of cases this Court has reviewed conclude that parties may continue to bring claims under the portions of § 227(b) unaltered by *AAPC*") (citing *Buchanan v. Sullivan*, No. 8:20-CV-301, 2020 WL 6381563, at *3 (D. Neb. Oct. 30, 2020); *Schmidt v. AmerAssist A/R Sols. Inc*., No. CV-20-00230-PHX-DWL, 2020 WL 6135181, at *4 n.2 (D. Ariz. Oct. 19, 2020); *Lacy v. Comcast Cable Commc'ns, LLC*, No. 3:19-cv-05007-RBL, 2020 WL 4698646, at *1 (W.D. Wash. Aug. 13, 2020); *Komaiko v. Baker Techs., Inc*., No. 19-cv-03795-DMR, 2020 WL 5104041, at *2 (N.D. Cal. Aug. 11, 2020); *Burton v. Fundmerica, Inc*., No. 8:19-

---

[1] Defendants in these cases did not timely notify the government of their constitutional challenges and the United States accordingly had no opportunity to intervene in the district courts. The *Lindenbaum* decision has been appealed, and the United States has intervened in the Sixth Circuit and filed a brief arguing that the decision below should be reversed. A fourth court in *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, No. 5:20-cv-38-OC-30PRL, 2020 WL 7346536 (M.D. Fla. Dec. 11, 2020), found that it lacked subject matter jurisdiction, but that court has since reversed itself on the same issue in a separate case. *See* Order at 4, *Boisvert v. Carnival Corp.*, No. 8:20-cv-2076-30SPF (M.D. Fla. Mar. 12, 2021), ECF No. 30 ("Upon further reflection, the Court departs from its earlier opinion because, since the Court's Order in Hussain, every court faced with this same issue has concluded that a plaintiff may continue to bring § 227(b) claims post-AAPC.").

CV-119, 2020 WL 4504303, at *1 n.2 (D. Neb. Aug. 5, 2020)); *see also Hossfeld v. American Fin. Sec. Life Ins. Co.*, No. 19-cv-60597, 2021 WL 1186526, at *4 (S.D. Fla. Mar. 29, 2021); *Moody v. Synchrony Bank*, No. 5:20-CV-61 (MTT), 2021 WL 1153036, at *5-7 (M.D. Ga. Mar. 26, 2021); Order at 14-17, *Massaro v. Beyond Meat, Inc.*, No. 3:20-cv-00510-AJB-MSB (S.D. Cal. Mar. 12, 2021), ECF No. 92; *McCurley v. Royal Sea Cruises, Inc.*, No. 17-cv-986-BAS-AGS, 2021 WL 288164 (S.D. Cal. Jan. 28, 2021); *Bonkuri v. Grand Caribbean Cruises, Inc.*, No. 0:20-CV-60638-WPD, 2021 WL 612212, at *2 (S.D. Fla. Jan. 19, 2021); *Stoutt v. Travis Credit Union*, No. 2:20-cv-1280 WBS AC, 2021 WL 99636, at *5 (E.D. Cal. Jan. 12, 2021); *Rieker v. Nat'l Car Cure, LLC*, No. 3:20-CV-5901-TKW-HTC, 2021 WL 210841, at *1 (N.D. Fla. Jan. 5, 2021); *Trujillo v. Free Energy Sav. Co.*, No. 5:19-cv-2072-MCS-SP, 2020 WL 8184336 (C.D. Cal. Dec. 21, 2020); *Shen v. Tricolor Cal. Auto Grp., LLC*, No. 20-cv-7419 PA (AGRX), 2020 WL 7705888 (C.D. Cal. Dec. 17, 2020).

## III.  Procedural Background

Plaintiff, Asif J. Poonja, filed his complaint on June 22, 2020, asserting violations of 47 U.S.C. § 227(b)(1)(A)(iii).  Compl. ¶¶ 28-32, ECF No. 1-1.  Plaintiff seeks to represent a class of all those who received an unsolicited text message from Defendant via an automatic telephone dialing system ("ATDS") "at any time during the relevant statutory time period."  *Id.* ¶ 20. Defendant moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) and 12(f), arguing that Plaintiffs have failed to satisfy the pleading standard for TCPA violations and have failed to identify a class sufficient for class certification. Mot. to Dismiss,  ECF No. 12.  Months later, and before the court had ruled on the first motion to dismiss, Defendant filed an additional motion to dismiss, Mot. to Dismiss, ECF No. 22, this time under Fed. R. Civ. P. 12(b)(1), 12(g)(2), and 12(h)(3) for lack of subject matter jurisdiction, citing the Supreme Court's *AAPC* ruling.  Mem. at

1. Because the alleged offending text message was received by Plaintiff in November 2019, Defendant argues it cannot be held liable for violating the autodialer restriction, because it was purportedly unconstitutional at that time. *Id.* at 13-15. According to Defendant, during that time period, the unconstitutional government-debt exception was still operative and it therefore rendered the entire autodialer restriction unconstitutional. *Id.*

On December 21, 2020, Defendant filed a Federal Rule of Civil Procedure 5.1 notice of constitutional challenge, Notice, ECF No. 25, and served it on the Attorney General by sending it via certified mail on December 21, 2020. On March 3, 2021, the Government filed an unopposed motion for an extension of time, *nunc pro tunc*, to May 3, 2021, to determine whether to intervene on the question of the constitutionality of the TCPA's autodialer restriction. Mot. for Extension, ECF No. 36. The court granted the extension motion on March 5, 2021. Order, ECF No. 37.

## ARGUMENT

### I. The Court Should First Resolve Nonconstitutional Grounds for Decision

As an initial matter, this Court should not address Defendant's constitutional challenge until it resolves all potential nonconstitutional issues. "[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). In addition to its constitutional challenges, Defendant argues that the complaint should be dismissed on non-constitutional grounds. *See, e.g.,* Mot. to Dismiss & Mem. in Supp. of Mot. to Dismiss, ECF Nos. 12, 13. As a matter of constitutional avoidance, the Court should first address these potential non-constitutional grounds of decision, which may obviate the need to decide the constitutional question.

### II. Defendants May Be Held Liable For Texts Sent Before *AAPC*

In holding that the government-debt exception was unconstitutional and severable from the remainder of the TCPA, the Supreme Court in *AAPC* affirmed the validity of the TCPA's

prohibition on making autodialed calls or texts to cell phones without the consent of the person being called or texted. *See* 140 S. Ct. at 2349, 2353 (plurality op.). The plurality further explained that the Court's opinion "does not negate the liability of parties who made robocalls" prior to the Court's decision. *Id.* at 2355 n.12. Therefore, if the Court reaches the constitutional question, it should hold (consistent with *AAPC*) that Defendant may be held liable for violations of the autodialer restriction that occurred after the enactment of the government-debt exception and prior to the Supreme Court's decision in *AAPC*.

> **a. Because the Government-Debt Exception Was an Unconstitutional Amendment to an Otherwise Valid Statute, It Had No Effect on the Autodialer Restriction, Which Has Been Fully Operative at All Relevant Times**

There is no dispute that the autodialer restriction was valid before the enactment of the government-debt exception and that it is likewise valid and enforceable today. Defendant urges, however, that the entire autodialer restriction is unenforceable for the period of time between the enactment of the government-debt exception and the Court's determination in *AAPC* that the exception was severable. *See* Mem. at 13.

That view cannot be squared with *AAPC* and the Supreme Court's prior decisions concerning the effect of invalid amendments to constitutional statutes. The Supreme Court has long made clear that an unconstitutional amendment is "powerless to work any change in the existing statute," and that the original "statute must stand as the only valid expression of the legislative intent." *Frost*, 278 U.S. at 526-27. Thus, the validity of a provision "c[an]not be impaired by the subsequent adoption of what were in form amendments, but, in legal effect, were mere nullities." *Eberle v. Michigan*, 232 U.S. 700, 705 (1914).

Citing those principles, *AAPC* confirmed the continuing validity of the autodialer restriction, explaining that "an unconstitutional statutory amendment" like the government-debt

exception "'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." 140 S. Ct. at 2353 (plurality op.) (quoting *Frost*, 278 U.S. at 526-27). The *AAPC* plurality further concluded that the "constitutionally offending" government-debt exception was severable from the remainder of the statute, *see id.* at 2353; *id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J.) (concurring in judgment with respect to severability and dissenting in part), and that its enactment did not have any effect on the concededly valid restrictions already in effect, *id.* at 2348-49 (plurality op.) (rejecting the suggestion that the amendment "betray[ed] a newfound lack of genuine congressional concern for consumer privacy" that called the autodialer restriction into doubt).

Prior Supreme Court decisions applying those principles confirm that a defendant may be liable for violating a provision notwithstanding the enactment of an unconstitutional amendment. In *Eberle*, the Court affirmed the petitioner's conviction under a Michigan law prohibiting the manufacture of alcohol even though amendments to the law enacted prior to the alleged violation were inconsistent with principles of equal protection. 232 U.S. at 706. The Court explained that the original "statute had been held to be constitutional, and prohibited, without discrimination, the manufacture of all liquors. That valid act the defendants violated, and their conviction cannot be set aside" based on the enactment of unconstitutional amendments to the rule. *Id.* Likewise, in *United States v. Jackson*, 390 U.S. 570, 591 (1968), the Court held that the defendants could be tried under the Federal Kidnapping Act for alleged violations of its original terms, which prohibited the interstate transport of kidnapped individuals, notwithstanding the unconstitutionality of an amendment that conditioned the possibility of capital punishment on the exercise of the right to trial by jury. In holding the capital punishment clause invalid and severable from the remainder of the statute, *id.* at 583, 586, the Court confirmed that "the unconstitutionality

9

of that clause does not require the defeat of the law as a whole," *id.* at 586. And the Court held that, notwithstanding the unconstitutional amendment, "[t]he appellees may be prosecuted for violating" the original terms of the Act. *Id.* at 591.

Defendant's position cannot be reconciled with the holdings in *Eberle* and *Jackson*. In each case, the defendant allegedly violated a law that was constitutional as originally enacted. *See AAPC*, 140 S. Ct. at 2353. And in each case, the violation of the original provision occurred after the legislature had enacted an amendment that was later held to be invalid and severable from the statute. Thus, the principles that provided for liability in *Eberle* and *Jackson* likewise allow that result here.

Defendant's argument is also at odds with longstanding principles of judicial review insofar as Defendant suggests that the *AAPC* decision altered the law. When the "Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law," and it is therefore "not accurate to say that the Court's decision . . . 'changed' the law that previously prevailed." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313 n.12 (1994). An interpretation of a statute in a judicial opinion is a statement of "what the law *is*," not "what it is today *changed to*, or what it will *tomorrow* be." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 549 (1991) (Scalia, J., concurring in judgment). Accordingly, when the Supreme Court holds that an amendment to a statute is inconsistent with the Constitution, it is holding that the provision was unconstitutional from the outset, not that it is newly invalid upon the entry of final judgment. *See Chicago, I. & L. Ry. Co. v. Hackett*, 228 U.S. 559, 566 (1913) ("Th[e] act was therefore as inoperative as if it had never been passed, for an unconstitutional act is not a law, and can neither confer a right or immunity nor operate to supersede any existing valid law."); *see also Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993) (confirming that when the

10

Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Court's] announcement of the rule").

*AAPC*'s holding that the government-debt exception was unconstitutional and thus "as inoperative as if it had never been passed," *Hackett*, 228 U.S. at 566, means that the exception was always invalid and was therefore "powerless to work any change in the existing statute," even for a period of time, *Frost*, 278 U.S. at 526-27.  In concluding that the exception was severable from the remainder of the statute, the Court said what the TCPA has always meant, not what it meant as of the date of the Court's decision.  *See Rivers*, 511 U.S. at 312-13, 313 n.12.  Accordingly, there was never a time when the exception was invalid but not severed; by operation of law, the exception has been both invalid and severed since the date of its enactment, and defendant may be held liable under the valid remainder of the statute.

### b.  Defendant's Arguments Are Unavailing

Defendant chiefly relies upon two district court cases—*Creasy v. Charter Commc'ns, Inc.*, 489 F. Supp. 3d 499 (E.D. La. 2020) and *Lindenbaum v. Realgy, LLC*,  No. 1:19-cv-2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020)—in which the district court determined that the autodialer restriction could not be enforced for alleged violations that occurred between the enactment of the government debt exception and the Supreme Court's decision in *AAPC*.  Mem. at 11-13, 15. Defendant fails to acknowledge, however, the numerous district court cases that have ruled the opposite way.

Setting this failure aside, *Creasy* and *Lindenbaum*  are against the weight of authority on this issue, because they misapply the relevant governing authority on the effect of severance on an

unconstitutional statutory provision. In *Creasy*, the court held that "the unconstitutional amended version of § 227(b)(1)(A)(iii) is what applied to [defendant] at the time of the challenged communications at issue," *Creasy*, 489 F. Supp. 3d at 508. But that holding ignores the Supreme Court's precedent instructing that the unconstitutional government-debt exception has been both invalid and severed since the date of its enactment. It is therefore not the case that an unconstitutional version of the TCPA applied to Defendant at the time it allegedly sent an unsolicited text message to Plaintiff.

Similarly, in *Lindenbaum*, the district court erroneously rejected the application of the Supreme Court's precedent in *Eberle* and *Harper*, despite recognizing that "the plurality [in *AAPC*] mentions that an unconstitutional statutory amendment is a 'nullity' and 'void,' and therefore has 'no effect on the original statute,'" 2020 WL 6361915, at *7 (quoting *AAPC*, 140 S. Ct. at 2353). But rather than embracing this statement, the *Lindenbaum* court concluded incongruously that when the *AAPC* plurality said "void," it did not mean "void *ab initio*." *Id*. The *Lindenbaum* court explained that if "void" meant "void *ab initio*," then government-debt collectors would be subject to liability for their conduct between 2015 and 2020. The court recognized that this would raise "due process issues" and suggested that the plurality did not intend such a result. *Id*. (referencing *AAPC*, 140 S. Ct. at 2355 n.12). But, the court continued, "to treat it as void *ab initio* only as to certain parties would likely raise its own set of equal treatment concerns." *Id*. The court concluded that the fair result was to treat severance as permitting application of the statute only to conduct occurring after the decision in *AAPC*. *Id*. This analysis is directly contrary to Supreme Court precedent, which instructs that unconstitutional amendments are to be considered a nullity and void *ab initio*. The best reading of *AAPC*'s footnote 12 is that the three Justices recognized that even though government debt collectors would not be immunized by the

12

government-debt exception for their conduct between 2015 and 2020, they still would not be likely to face liability because they would have a defense based on separate constitutional considerations, such as due process.[2] And contrary to the *Lindenbaum* court's analysis, that result raises no equal treatment concerns. Holding debt collectors liable for calls made after the passage of the amendment but prior to the Court's decision in *AAPC* would implicate the "fundamental principle . . . that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *cf.* Model Penal Code § 2.04(3)(b)(i) (providing a defense to criminal liability when a defendant "acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in . . . a statute or other enactment"). But while debt collectors would not have been on notice that their conduct was prohibited due to the presence of the government-debt exception, the same would not be true of entities, such as Defendant, whose actions were always covered by the TCPA. Therefore, any differential treatment between debt collectors and other robocallers would not be based on preferential treatment of favored speech, but rather would follow from the fact that certain callers, such as Defendant, had fair notice of potential liability while others did not. That distinction is undisputedly content neutral.[3]

---

[2] Defendant asks this Court to ignore the *AAPC* plurality's statement in footnote 12 that the decision "does not negate the liability of parties who made robocalls" prior to the Court's decision, 140 S. Ct. at 2355 n.12, arguing that this statement is non-binding dicta. *See* Mem. at 9. Although it is true that this footnote appeared in an opinion signed by only three Justices, neither of the opinions expressly concurring with respect to severability disagreed with the footnote's conclusion.

[3] It is for this reason that *Cunningham v. Matrix Fin. Servs., LLC,* No. 4:19-CV-896, 2021 WL 1226618 (E.D. Tex. Mar. 31, 2021) was wrongly decided. Aside from being an out-of-circuit outlier, the *Cunningham* court's conclusion that it lacked jurisdiction in this context was based on its erroneous view that reading the government-debt exception as void *ab initio* would improperly ignore the reality that the exception did in fact exist at one point and "individuals conformed their conduct in accordance with the presumptively constitutional government-debt exception." *Id.* at

Finally, Defendant's reliance on several cases that it briefly cites, such as *Marbury v. Madison*, 5 U.S. 137 (1803), is misguided. *See* Mem. at 13-14. Defendant quotes *Marbury*'s statement that "a law repugnant to the constitution is void," 5 U.S. at 180, and cites to various other cases to support this proposition. *See* Mem. at 14. But none of these cases requires the outcome sought by Defendant. In fact, the majority of the cases do not speak to severance scenarios at all. *Montgomery v. Louisiana*, 577 U.S. 190, 204 (2016) (holding that "[t]here is no grandfather clause that permits States to enforce punishments [that] the Constitution forbids," but not addressing severance scenarios); *Ex parte Siebold*, 100 U.S. 371, 376 (1879) (holding that "[a]n unconstitutional law is void, and is as no law" in the context of a challenge claiming that an entire act of Congress "under which the indictments were found [was] unconstitutional"); *Marbury*, 5 U.S. at 180 (holding that courts are empowered to strike down government actions that violate the Constitution, but not addressing severance); *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 369-70 (7th Cir. 2019), *cert. denied sub nom. GEFT Outdoor LLC v. City of Westfield*, 140 S. Ct. 268 (2019) (explaining that a statute is unconstitutional only "[a]fter a court holds that [it] . . . is unconstitutional," and that "[p]arties who believe that a statute or ordinance is unconstitutional must wait for" a "court[] ruling that the law is invalid" "before treating the challenged law as nonexistent"); *United States v. Baucum*, 80 F.3d 539, 540-41 (D.C. Cir. 1996) (stating, in a case unrelated to severance, that federal courts have no jurisdiction over alleged violations of a statute that has been declared unconstitutional, but holding that the court *did* have jurisdiction to try Baucum). There is no dispute that a fully unconstitutional law is void, but that holding does not answer the central question in this case—whether the severance of the

---

*10. As other courts have pointed out, the fair notice principle accounts for that reality for government-debt collectors, while other robocallers, like the defendant in that case, were always prohibited from making robocalls under the TCPA. *Cf. Moody*, 2021 WL 1153036, at *5-7.

14

government debt exception as unconstitutional renders the entire autodialer restriction void for the relevant time period. *Marbury*, *Siebold*, *Montgomery*, *GEFT Outdoors*, and *Baucum* do not speak to this question.

The one remaining case upon which Defendant relies, *Grayned v. City of Rockford,* 408 U.S. 104 (1972)*,* is distinguishable. There, the petitioner had been convicted of violating a content-based, anti-picketing ordinance. Following the petitioner's conviction, the ordinance was amended to omit the exception that had rendered the law content-based. In a footnote, the *Grayned* Court noted that the amendment had "no effect" on the validity of the petitioner's conviction because the Court "must consider the facial constitutionality of the ordinance in effect when appellant was arrested and convicted." 408 U.S. at 107 n.2. But *Grayned* is distinguishable from the present case. Unlike in *AAPC*, the Court gave no indication in *Grayned* that the statute's content-based exception was severable from the remainder of the statute. There is no indication that the provision contained a severability clause like the one found in the Communications Act. Indeed, there was no discussion at all in *Grayned* about severance as a possible cure of the unconstitutional provision of the statute. Accordingly, the anti-picketing provision as a whole was invalid as enacted, and the Court held that Grayned could not be convicted under that unconstitutional provision. By contrast, *AAPC* confirms that the autodialer restriction was valid when enacted and that the government-debt exception was severable and did not undermine the validity of the restriction. 140 S. Ct. at 2349, 2353 (plurality op.). *Grayned* therefore provides no basis for allowing Defendant to avoid liability in these circumstances, in which the alleged misconduct violated a valid restriction. *Cf. United States v. Miselis*, 972 F.3d 518, 547 (4th Cir. 2020) (holding that defendants could be convicted for violating portions of an anti-riot statute that the court held were valid and severable from provisions found to violate the First Amendment).

## CONCLUSION

For the foregoing reasons, the Court should reject Defendant's constitutional challenge.


DATED: May 3, 2021                     Respectfully submitted,

                                          BRIAN M. BOYNTON
                                          Acting Assistant Attorney General

                                          ERIC R. WOMACK
                                          Assistant Director, Federal Programs Branch

                                          By: s/ *Laurel H. Lum*
                                             LAUREL H. LUM
                                           Trial Attorney
                                           United States Department of Justice
                                           Civil Division
                                           1100 L St. NW
                                           Washington, DC 20005
                                         (202) 305-8177
                                         laurel.h.lum@usdoj.gov