IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ASIF J. POONJA, individually and on behalf of a class of similarly situated individuals, ) ) ) Plaintiff, ) ) v. ) ) KELLY SERVICES, INC., ) a Delaware corporation, ) ) Defendant. ) | Case No. 20-cv-4388<br><br>Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Defendant's motions to dismiss [12, 22] are both denied. Counsel are directed to confer and to file no later than October 15, 2021 a joint status report that includes a proposed case management plan consistent with this opinion and the Court's guidance on the staging of discovery, see p. 3, *infra*.

**I.  Factual Background**

The impetus for Plaintiff's proposed class action complaint [1-1] is a single text message that Plaintiff unexpectedly received on November 21, 2019 [*id*. ¶ 14]. That text message, sent from the phone number 1-833-650-4026 at 11:38 a.m. stated as follows:

> Immediate openings for warehouse associate/machine operator roles in Lake Zurich, IL. 1st shift & 2nd shifts available starting pay rate at $15/hr. and up. If interested, please call us at 847-995-9350, email us at 2423@kellyservices.com, or text back.

[*Id*. (screen shot of text message)]. At the bottom of the text was an additional message: "(Reply STOP to stop anytime)". *Id*. Plaintiff alleges that Defendant advertises various job listings like the one quoted above for thousands of businesses nationwide in an effort to assist those businesses to fill open positions. *Id*. ¶ 12. Plaintiff infers from (a) the use of a dedicated 1-833 toll free

number, (b) the generic nature of the text message, and (c) the automated "STOP" and "text back" functionality that the text message he received was sent using an ATDS in violation of the TCPA. *Id*. ¶¶ 15-17.

On June 22, 2020, Plaintiff commenced this action in the Circuit Court of Cook County. Defendant removed the case to federal court and has filed two separate motions to dismiss Plaintiff's complaint. In its first motion [12], Defendant raises traditional arguments for dismissal under Federal Rule of Civil Procedure 12(b)(6). Specifically, Defendant contends that Plaintiff has not satisfied the basic requirements of notice pleading under Federal Rule of Civil Procedure 8, including that Plaintiff has not adequately pled that the text message in question was generated by an ATDS. Defendant also challenges Plaintiff's demand for treble damages based on alleged willful conduct and asks the Court to strike Plaintiff's class allegations as well. In its second motion [22], Defendant submits that the Court lacks subject matter jurisdiction on the basis of the Supreme Court's decision in *Barr v. American Association of Political Consultants*, 140 S. Ct. 2335 (2020), which invalidated the so-called "government debt exception" to the TCPA on First Amendment grounds but found the offending provision, added by Congress in 2015, to be severable from the statute as a whole, *id*. at 2353 (plurality opinion); see also *id*. at 2357 (Sotomayor, J., concurring in the judgment); *id*. at 2363 (Breyer, J., concurring in judgment with respect to severability and dissenting in part). According to Defendant, the presence of the government debt exception between 2015 and 2020 rendered the entire autodialer restriction in the TCPA unconstitutional and thus unenforceable today. [See 23, at 1, 13-15.][1]

---

[1] Following the filing of Defendant's second motion to dismiss, the United States filed a notice of intervention [38], as it is authorized to do under Federal Rules of Civil Procedure 5.1(c) and 24(a)(1), 28 U.S.C. §§ 517 & 2403, for the limited purpose of defending the constitutionality of the TCPA. On the same day, the United States filed a memorandum of law [39]. The Court then allowed Defendant to file a supplemental brief [41] to address the arguments advanced by the United States.

2

For the reasons stated below, the Court does not find any of Defendant's arguments persuasive. Some are incorrect; others premature; but none justifies terminating any aspect of this lawsuit at this time. With that said, a single text is a thin basis upon which to launch full-blown discovery on a putative nationwide class action. Accordingly, the Court is inclined to stage discovery so that the parties can first discern whether (a) Defendant did in fact use an ATDS to send the text message in question and (b) how far and wide that message was sent—*i.e.*, locally in the area where the job advertised would be performed, or across the nation, as Plaintiff suspects.

**II.     Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint typically must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the *** claim is and the grounds upon which it rests." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S at 555). In determining whether the complaint meets this standard, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth*, 507 F.3d at 618.

In regard to motions under Rule 12(b)(1), "[w]hen ruling on a motion to dismiss for lack of subject matter jurisdiction, a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Twin City Fire Ins. Co. v. Law Off. of John S. Xydakis, P.C.*, 407 F. Supp. 3d 771, 775 (N.D. Ill. 2019) (citations omitted). A court "may properly look beyond the jurisdictional allegations of the complaint and view

whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists," including by taking judicial notice of public records. *Id*. As the Sixth Circuit recently has observed, notwithstanding the styling of a motion as to dismiss as challenging the jurisdiction of a court, the motion may "more accurately be considered a Rule 12(b)(6) motion to dismiss for failure to state a claim" when "the right of the [plaintiffs] to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another." *Lindenbaum v. Realgy, LLC*, --- F.4th ---, 2021 WL 4097320, at *2 (6th Cir. Sept. 9, 2021) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Bell v. Hood*, 327 U.S. 678, 685 (1946)). That observation is on point here, for if Plaintiff's "arguments about the continuing vitality of the robocall restriction from 2015 to 2020 are correct, [he] is entitled to relief." *Id*.

### III. Discussion

#### A. Defendant's First Motion to Dismiss

This action arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), which "proscribes abusive telemarketing practices by, among other things, imposing restrictions on making calls with an 'automated telephone dialing system." The TCPA defines an "automated telephone dialing system" ("ATDS") as a piece of equipment with the capacity both "to store or produce telephone numbers to be called, using a random or sequential number generator," and to dial those numbers. 47 U.S.C. § 227(a)(1). The TCPA makes it unlawful for any person to place a call or text using an ATDS to a cellular telephone without that individual's express consent. 47 U.S.C. § 227(b)(1)(A)(iii); see also *Blow v. Bijora, Inc.*, 855 F.3d 793, 798 (7th Cir. 2017) ("text messages to a cellular phone constitute 'calls'" under the TCPA). Breaking down the statute's prohibition, to state a cause of action under the TCPA, a plaintiff must allege (i) a call was made

4

or a text was sent; (ii) the caller/sender used an ATDS; (iii) the number called was assigned to a cellular telephone service; and (iv) the caller did not have the recipient's prior express consent.

Earlier this year, the Supreme Court resolved a circuit split "regarding whether an autodialer must have the capacity to generate random or sequential phone numbers." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1168-69 (2021). The Court agreed with the Seventh Circuit (see *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 468 (7th Cir. 2020)) in holding that to qualify as an "automatic telephone dialing system" ("ATDS"), "a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook,* 141 S. Ct. at 1173.

### 1. The Sufficiency of the Complaint's Allegations

The allegations of the complaint – including a screen shot of the text in question – plainly show that a text was sent to what Plaintiff alleges is his cell phone number. The screen shot reveals the date, time, and number from which the text was sent. Plaintiff also alleges that he did not give his prior express consent to receiving texts or calls from Defendant. The only pleading question requiring detailed examination is whether Plaintiff has adequately alleged that Defendant used an ATDS to send the text.

Defendant claims that Plaintiff's allegations regarding an ATDS "are barebones and amount to rank speculation." [13, at 8.] But, as many judges in this District have recognized, "it is unclear how plaintiffs can plead the technical details of the system used by a defendant when the defendant has that information." *Klueh v. Paul Vallas for All Chi.*, 2020 WL 4934975, at *6 (N.D. Ill. Aug. 24, 2020); see also *Czerniak v. Servis One, Inc.*, 2017 WL 1196886, at *3 (N.D. Ill. Mar. 31, 2017) ("discovery is typically necessary for the plaintiff to obtain the facts necessary to demonstrate an autodialer was used"); *Torres v. Nat'l Enterprise Sys., Inc.*, 2012 WL 3245520,

at *3 (N.D. Ill. Aug. 7, 2012) (noting that it is "virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used for a communication"). Still, post-*Gadelhak*, some factual details must be alleged to demonstrate the plausibility of a plaintiff's contention that an ATDS was involved in the communication giving rise to the cause of action. See *Perez v. Quicken Loans, Inc.*, 2020 WL 1491145, at *2 (N.D. Ill. Mar. 27, 2020).

In regard to what type of allegations will suffice, Judge Ellis' decision in *Rohde v. ADP, LLC*, Case No. 19-cv-3347, Docket Entry 27 (N.D. Ill. Feb. 21, 2020), is instructive. Decided two days after *Gadelhak* and relying on the Seventh Circuit's definition of an ATDS, which since has been adopted by the Supreme Court, *Rohde* rejected the defendant's argument that the plaintiff's factual allegations were too conclusory. There, the plaintiff alleged that the offending text messages were sent "using a dedicated short-code phone number" and further pointed to the "generic nature" of the messages themselves. *Id*. at 8-10. Other courts, too, have viewed dedicated SMS numbers and/or generic or impersonal messages as sufficient at the pleadings stage to indicate the involvement of an ATDS in placing the call or sending the text. See *Jara v. Redbox Auto. Retail, LLC*, 2020 WL 433869, at *2 (N.D. Ill. Jan. 28, 2020); *Izsak v. Draftkings, Inc.*, 191 F. Supp. 3d 900, 904 (N.D. Ill. 2016). Consistent with these cases, Plaintiff's allegations of a generic message, sent by a 1-833 number, with "STOP" and "text back" functionality suffice to survive a motion to dismiss.

### 2.     Motion to Strike Claim for Treble Damages

Defendant also asks the Court to strike Plaintiff's claim for treble damages based on a willful violation. Under the TCPA, a plaintiff may recover either the actual monetary loss sustained as a result of the violation of the statute or "receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). "If the court finds that the defendant

willfully or knowingly violated this subsection, or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under subparagraph (B) of this paragraph." *Id*. § 227(b)(3). Defendant reads Plaintiff's complaint as alleging inadvertence, but not intentional conduct. The germane paragraph states that "Defendant failed to implement proper procedures to confirm that the telephone numbers to which Defendant sent the automated text message advertisements belonged to individuals who actually consented to receive such messages." (Compl. ¶ 13.) Accepting that allegation as true and construing it in the light most favorable to Plaintiff, the Court cannot say that it excludes the possibility of willful conduct. Perhaps discovery will reveal, as Plaintiff suspects, that Defendant sent the text message in question even though it knew that it lacked Plaintiff's prior express written consent and that it did not have in place any procedures to ascertain whether it had such consent. [See 20, at 9.] Perhaps discovery will show that the text was sent inadvertently. Because either possibility remains in play, striking the claim for treble damages would be premature.

### 3. Motion to Strike Class Allegations

Similarly, Defendant's request that the Court strike Plaintiff's class allegations is premature. To be sure, Plaintiff will need to connect an awful lot of dots to sustain a nationwide class action based on the single text message that he received. Given the potential for expensive discovery in class action litigation and the command of Rule 26(b)(1) that courts allow discovery that is "proportional to the needs of the case," the Court will keep moving this case forward on an issue-by-issue basis until Plaintiff is able to establish, at a minimum, that Defendant used an ATDS to send the offending text message. Nevertheless, there is no need to foreclose the possibility that this case is appropriate for class treatment if discovery bears out Plaintiff's adequately pleaded

theory of the origins of that text. See *Wagner v. General Nutrition Corp.*, 2017 WL 3070772, at *9 (N.D. Ill. July 19, 2017) (deferring ruling on class certification until after "class discovery, the plaintiff's motion for certification, and the benefit of full briefing on the issue of class certification"); *Mednick v. Precor, Inc.*, 2014 WL 6474915, at *7 (N.D. Ill. Nov. 13, 2014) ("Whether a plaintiff has fulfilled Rule 23 class action requirements * * * is not an appropriate inquiry at the motion to dismiss stage.") (internal quotation marks and citation omitted).

### B. Defendant's Second Motion to Dismiss

In the aftermath of the Supreme Court's decision in *Barr v. American Association of Political Consultants*, 140 S. Ct. 2335 (2020), Defendants filed a second motion to dismiss on the ground that the Court lacks subject matter jurisdiction. Relying on three district court rulings, Defendants assert that the *Barr* decision obliterated any causes of action based on the TCPA's autodialer restrictions between the enactment of the provision invalidated by the High Court and the date of its decision striking down that provision. Earlier this month, the Sixth Circuit, in the first court of appeals decision on point, reversed one of the three decisions on which Defendant relies. *Lindenbaum v. Realgy, LLC*, --- F.4th ---, 2021 WL 4097320, at *2 (6th Cir. Sept. 9, 2021). The vast majority of district judges to have addressed the issue have reached the same conclusion as the Sixth Circuit, see *Marshall v. Grubhub, Inc.*, 2021 WL 4401496, at *3 n.3 (N.D. Ill. Sept. 27, 2021) (collecting approximately 20 cases)), as does this Court.[2]

At its core, the issue presented by Defendant's second motion is a math problem. How many Justices agree with the observation made in Justice Kavanaugh's plurality opinion that the

---

[2] In so holding, this Court joins Judges Leinenweber, Norgle, and Tharp in adhering to the majority view as to the continuing validity of the pre-2015 robocall prohibitions under the TCPA. See *Marshall*, 2021 WL 4401496, at *3; *Bilek v. Nat'l Cong. of Emps., Inc.*, 2021 WL 4027512, at *2 (N.D. Ill. June 28, 2021); *Bakov v. Consolidated World Travel, Inc.*, 2021 WL 4026978, at *3 (N.D. Ill. Mar. 8, 2021). The Court is not aware of—and no party has cited—any decision in this District to the contrary.

Court's decision in *Barr* "does not negate the liability of parties who made robocalls" between 2015 and the date of the Court's decision? 140 S. Ct. at 2355 n.12. The Sixth Circuit and the overwhelming weight of district court authority have concluded that the combination of the three-Justice plurality and the four additional Justices who agreed that the 2015 amendment was severable from the rest of the TCPA (see *id*. at 2353 (plurality opinion); see also *id*. at 2357 (Sotomayor, J., concurring in the judgment); *id*. at 2363 (Breyer, J., concurring in judgment with respect to severability and dissenting in part)) leaves intact the autodialer restriction on which Plaintiff here relies in his complaint. *Lindenbaum*, 2021 WL 4097320, at *2-4 (explaining that, in *Barr*, the Supreme Court "recognized only that the Constitution had 'automatically displace[d]' the government-debt-collector exception from the start, then interpreted what the statute has always meant in its absence" and that its "legal determination applies retroactively"); *Thomas v. Life Protect 24/7 Inc.*, --- F. Supp. 3d ---, 2021 WL 4127144, at *6-*7 (S.D. Tex. Sept. 10, 2021) ("That the exception was also found to be severable further confirms that its unconstitutional nature didn't infect the constitutionality of the remainder of the TCPA—all of which was language enacted on a stand-alone basis well prior to the exception"); *Roeder v. Collection Bureau of the Hudson Valley, Inc.*, 2021 WL 3888127, at *3-*4 (S.D.N.Y. Aug. 31, 2021).

Defendant stresses that only three Justices joined the plurality opinion, including footnote 12 in which Justice Kavanaugh directly addressed the key issue. But, as most courts have recognized, the punch line in the final sentence of footnote 12 simply amounts to a straightforward application of well settled severability doctrine. When the Supreme Court construes a statute, its holding states what the statute "has meant continuously since the date when it became law." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313 n.12 (1994). And the Supreme Court's "controlling interpretation of federal law * * * must be given full retroactive effect in all cases still open on

direct review and as to all events, regardless of whether such events predate or postdate" the Court's announcement of its interpretation. *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97, 113 (1993). Accordingly, the statement that "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction," *Barr*, 140 S. Ct. at 2355 n.12, follows legally and logically from the indisputably accurate observation that "seven Members of the Court conclude that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute," *id*. at 2343-44.

This Court respectfully disagrees with the district court decisions from other circuits in which judges have viewed footnote 12 as non-binding *dicta*. See *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, 2020 WL 7346536, at *5 (M.D. Fla. Dec. 11, 2020) (noting that footnote 12 "was only joined by 3 justices and is *dicta*"); *Creasy v. Charter Commc'ns, Inc.*, 2020 WL 5761117, at *4 n.4 (E.D. La. Sept. 28, 2020) (noting that footnote 12 "is merely persuasive, as opposed to mandatory, because it appears in an opinion commanding the votes of only three Justices, and because * * * it constitutes mere 'obiter dictum'"). The Seventh Circuit has consistently instructed that "the Supreme Court's dicta must be respected." *Wi. Right to Life, Inc. v. Barland*, 751 F.3d 804, 836 (7th Cir. 2014); see also *Bakov*, 2021 WL 4026978, at *3 ("even positing that [footnote 12 in *Barr*] does constitute *obiter dictum*, it does not give comfort to lower courts that they can safely ignore it"). For, even if the Supreme Court transmits a message through dicta, lower courts "must respect" what the High Court says "given the Supreme Court's entitlement to speak through its opinions as well as through its technical holdings." *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (en banc). Defendant's argument, relying on the views of two Justices to suggest that this Court should disregard the clear result that follows from

the views of seven Justices, runs contrary to the Seventh Circuit's observation that "[a]n inferior court is not entitled to say that because the one is more persuasive than the eight, it will follow the one." *United States v. Bloom*, 149 F.3d 649, 653 (7th Cir. 1998).

## IV.  Conclusion

For the reasons stated below, Defendant's motions to dismiss [12, 22] are both denied. Counsel are directed to confer and to file no later than October 15, 2021 a joint status report that includes a proposed case management plan consistent with this opinion and the Court's guidance on the staging of discovery see p. 3, *supra*.

Dated: September 29, 2021

_____
Robert M. Dow, Jr.
United States District Judge